404 F.2d 749
 UNITED STATES of America, Appellee,
v.
E. Arthur BARROWS, Esther Barrows, John B. Lonergan, Big Bear Rock and Materials Company, B. R. Seaman, also known as Bernard R. Seaman, individually, B. R. Seaman as General Manager of Big Bear Rock and Materials Company, B. R. Seaman as President and General Manager of Berni-Lee, Inc., a California Corporation, doing business under the name of Big Bear Rock and Materials, Berni-Lee, Inc., a California Corporation, H & W Leasing, a California Corporation, Douglass Hayes and Joyce Ann Hayes, Appellants.
 No. 22691.
 United States Court of Appeals Ninth Circuit.
 December 20, 1968.
 Rehearing Denied January 28, 1969.
 Certiorari Denied April 21, 1969.
 
 See 89 S.Ct. 1468.
 John B. Lonergan (argued), of Lonergan, Jordan & Gresham, San Bernardino, Cal., for appellants.
 Robert Lynch (argued), Roger P. Marquis, Attys., Dept. of Justice, Clyde O. Martz, Asst. Atty. Gen., Washington, D. C., Wm. M. Byrne, Jr., U. S. Atty., Ernestine Tolin, Asst. U. S. Atty., Los Angeles, Cal., for appellee.
 Before BARNES and HAMLEY, Circuit Judges, and McNICHOLS, District Judge*.
 HAMLEY, Circuit Judge:
 
 
 1
 The United States brought this action to recover damages and obtain injunctive relief in connection with the operation, by defendants, of a sand and gravel mining and processing plant on lands in the San Bernardino National Forest. The defendants include E. Arthur Barrows, locator of a mining claim for sand and gravel on such lands, and B. Robert Seaman, general manager of Big Bear Rock and Materials Company which, as lessee, conducts a sand and gravel operation on the asserted claim.
 
 
 2
 The district court entered an order denying defendants' motion for summary judgment dismissing the action for lack of jurisdiction. In the same order, the court granted the Government's motion for a temporary injunction conditionally restraining defendants from damaging the surface lands and property in question pending an administrative determination of the validity of defendants' mining claim. Defendants appeal.
 
 
 3
 The relevant facts are not in dispute. Title to the lands in question, located in the San Bernardino National Forest, is vested in the United States as National Forest Lands save and to the extent that it is affected by the asserted mining claim referred to below. In 1953, Barrows and his wife posted and filed a location notice, later amended, whereby they purported to locate a mining claim for sand and gravel at a particular place in Grout Creek. Grout Creek is a seasonal stream emptying into Big Bear Lake in the San Bernardino National Forest. In 1960, the Barrows leased the claim to Seaman and his company, and the latter, with others, has since operated a large commercial sand and gravel mining and processing plant on the claim.
 
 
 4
 On March 18, 1964, the United States Forest Service initiated an administrative proceeding in the Riverside Land Office of the Bureau of Land Management of the Department of the Interior, to contest the validity of the claim for lack of timely discovery of a valuable mineral deposit prior to July 23, 1955.[1] The Hearing Examiner filed a decision on March 4, 1966, declaring the mining claim to be null and void for lack of a timely discovery of a valuable mineral deposit. The contestees in that proceeding, who include some of the defendants in the case now before us, took a timely appeal to the Director of the Bureau of Land Management.
 
 
 5
 On June 8, 1967, while the appeal was pending before the agency, the United States commenced this action. The contest proceeding remained undecided at the time the district court entered the order here under review.
 
 
 6
 Defendants assert that the district court did not have subject matter jurisdiction of this action and that it therefore erred in issuing an interlocutory injunction and in denying defendants' motion for summary judgment dismissing the action. Defendants argue that until the agency has reached a final administrative decision as to the validity of the claim, the district court can have no jurisdiction of the controversy.
 
 
 7
 In its complaint the Government alleged that the claim was null and void and sought: (1) a preliminary and final injunction enjoining defendants from damaging the surface of the lands in question, from removing materials therefrom, and from maintaining thereon a sand and gravel processing plant; (2) an accounting for the materials removed to date and for damages for the conversion of such materials; and (3) damages for conversion by defendants of "frontage materials" and realty from the lands.
 
 
 8
 The full relief requested could not have been granted without the court first determining the validity of the claim. In so determining, the court could not rely on the Hearing Examiner's decision referred to above since, an agency appeal having been taken, that decision is not final. See 43 C.F.R. § 1840.0-9(a) (1966). Thus, the court would have to decide de novo the same question which is pending before the proper administrative agency.
 
 
 9
 Therefore, it may be, as defendants contend, that until the agency has rendered a final administrative decision as to the validity of the mining claim, the district court is without subject matter jurisdiction to adjudicate that question in the course of considering all of the Government's requests for relief. But we need not, and do not, now decide whether defendants are right as to this. The order under review does not purport to adjudicate the validity of the mining claim, nor does it grant the Government any relief which requires such an adjudication.
 
 
 10
 The only relief that the district court granted the United States was a temporary conditional injunction restraining defendants from damaging the surface lands and property, and from removing dirt, sand, gravel and other surface materials thereon, until the trial and final determination of the court case or until the further order of the court. Neither the order nor the findings and conclusions upon which it is based purport to adjudicate the validity of the mining claim.
 
 
 11
 Quite to the contrary, the order was responsive to a Government motion for a conditional restraining order to prevent irreparable injury to the land pending the outcome of the administrative proceedings. The court specifically found that defendants were removing vast quantities of sand and gravel beyond that which is seasonably replenished, "to the immediate, continuous and irreparable damage of [the] forest lands."
 
 
 12
 The district court had subject matter jurisdiction to grant relief of that limited character whether or not it also had jurisdiction, prior to a final decision in the contest proceeding, to adjudicate the validity of the claim. See Northern Pacific Ry. Co. v. McComas, 250 U.S. 387, 392, 39 S.Ct. 546, 63 L.Ed. 1049; Kennedy v. United States, 9 Cir., 119 F. 2d 564, 565.
 
 
 13
 Since, as we have held, the district court had jurisdiction to issue the temporary injunction, the court did not err in denying defendants' motion to dismiss the action for lack of jurisdiction.
 
 
 14
 The views expressed above also call for rejection of defendants' contention that, apart from the problem of subject matter jurisdiction, the district court should have stayed its hand until the administrative decision as to the validity of the claim was final. In fact, the district court has stayed its hand concerning the validity of the claim, whether it was required to or not. It has acted only to prevent what it found to be irreparable damage, pending an administrative (and perhaps thereafter, a judicial) proceeding on the validity issue.
 
 
 15
 Defendants argued orally to this court, but not in their briefs nor, apparently, in the trial court, that if they are restrained by court process from continuing the sand and gravel operation, they will lose what they now contend to be a valid claim. They predicate this contention on the asserted fact that continued validity of the mining claim depends upon continued marketability of the sand and gravel. In response, counsel for the Government told this court, at oral argument, that if defendants had a valid claim when the injunction order was entered, it would be "completely unreasonable" for the Government to urge that loss of a market for the sand and gravel resulting from such injunction would prejudice the validity of the claim. We agree, and hold that the Government-sought temporary injunction may not be permitted to prejudice defendants' asserted rights in this way.
 
 
 16
 Defendants argue that they are entitled to operate the claim unless and until it has been fully determined to be invalid.
 
 
 17
 Their right to the claim, unless and until the claim is finally declared void, is a property right. Adams v. Witmer, 9 Cir., 271 F.2d 29, 33. Thus, until a final determination is made, the Government, short of a condemnation proceeding, is probably not entitled to enter upon the claim or to require defendants to move their plant.
 
 
 18
 It must be remembered, however, that the Government is the underlying property owner and, as such, has interests entitled to protection. Balancing the interests of each, we think the court had power to prevent defendants from causing irreparable damage to the land, pending determination of the validity of defendants' claim. We find nothing in the record which convinces us that the district court abused this power in granting the temporary injunction.
 
 
 19
 Defendants urge that the purpose of a preliminary injunction is to preserve the status quo pending final determination of the action. They contend that the status quo is the last uncontested status which preceded the pending controversy. See Tanner Motor Livery, Ltd. v. Avis, Inc., 9 Cir., 316 F.2d 804, 809.
 
 
 20
 As pointed out in Tanner, however, there are no hard and fast rules in this area, and the courts have considerable discretion in fashioning relief. In fashioning such relief it is not usually proper to grant the moving party, on a temporary basis, the full relief to which he might be entitled if successful at trial. Here, however, the Government did not seek, nor did the district court grant, the full relief to which the Government may be entitled after a full trial.
 
 
 21
 We hold that, under the circumstances of this case, where irreparable damage to the Government's property interest was threatened, the court did not abuse its discretion in granting temporary relief which, in effect, disturbed the status quo.
 
 
 22
 Affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Ray McNichols, United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 In order for a mineral claim on public lands to be valid it is necessary that the discovered mineral deposits be "valuable." 30 U.S.C. § 22 (1964). As of July 23, 1955, under 30 U.S.C. § 611 (1964), no deposits of "common varieties" of sand, stone, gravel, pumice, pumicite or cinders may be deemed a valuable mineral deposit within the meaning of the mining laws of the United States. Palmer v. Dredge Corporation, 9 Cir., 398 F.2d 791, 792, 795. It follows that if defendants did not discover valuable sand and gravel deposits on the lands in question prior to July 23, 1955, they do not have a valid claim