**UNITED STATES of America,
Plaintiff,**

v.

**Harlan H. FORESYTH, Don H. Peaker,
Rexford L. Mitchell and Earl J.
Brubaker, Defendants.**

**Civ. A. No. C–1863.**

United States District Court,
D. Colorado.

Jan. 14, 1971.

**762**

James L. Treece, U. S. Atty., and Leonard W. D. Campbell, Asst. U. S. Atty., Denver, Colo., for plaintiff.

Lohf & Barnhill by R. Lauren Moran, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

### I. THE EVIDENCE

In this case the Government seeks an injunction prohibiting defendants from continuing to mine or .explore for limestone on forest lands located in Teller and El Paso Counties in Colorado.

In essence the Government seeks to prohibit these activities, at least during the pendency of the administrative proceedings to determine the validity of the claims.[1] The bases urged for this injunction are (1) that the core drilling, road building, and excavation operations which defendants propose and intend to

conduct will cause great and irreparable damage to the land belonging to the United States, pending administrative determination of the validity of said claims; and (2) by virtue of a properly filed and recorded request for withdrawal of the lands in question, such lands have been temporarily segregated "from settlement location, sale, entry, lease, and other forms of disposal under the public land laws, including the mining * * * laws * * * *" pursuant to the regulations of the Secretary of the Interior, 43 C.F.R. § 2311.1–2. In part because the validity and effect of the request for withdrawal has a significant or determinative impact on the administrative proceeding (Colorado Contest # 425) concerning the validity of the claims, defendants by way of counterclaim request this Court to declare the purported request for withdrawal void and of no effect or inoperative and of no effect as to them.[2]

At various times during 1966, the defendants located, pursuant to state law, certain mining claims known as the Avenger claims 1 through 25 in El Paso and Teller Counties, Colorado—within the Pike National Forest.[3] Thereafter,

---

1. The validity of the claims is being contested by the Government in Colorado Contest No. 425, presently pending before a hearing examiner of the Bureau of Land Management, Department of the Interior.

 Defendants correctly point out that the prayer for relief in the complaint to this action sought a preliminary injunction pending final determination of *this* case (which, in effect, they obtained), and that thereafter, on final hearing, of *this* case, said preliminary injunction be made permanent. Plaintiff's position, however, changed after the initial pleadings were filed. In its post-hearing memorandum brief plaintiff (the Government) submits that a temporary injunction should issue prohibiting any activity *pending disposition of Contest # 425.* The significance of this distinction in remedies is discussed *infra*, § II(A).

2. Both parties have requested that the validity and effect of the request for withdrawal be determined by this Court; and there is some indication that the

hearing examiner in the administrative proceeding (Colorado Contest # 425) is awaiting decision by this Court before making his decision. The hearing examiner took the case under advisement in January 1970, expressing substantial doubts about the withdrawal question. Briefs were requested and filed, but no decision has yet been rendered. Whether this Court can or should determine the withdrawal issue will be discussed *infra*, § II(B).

 It is noteworthy that these claims are located in Pike National Forest, which area has been shown to have scenic and recreational values, and hence the dispute between the parties can be said to have ecological undertones—and overtones as well.

3. The validity of the locations is not here in issue. The locations give defendants certain possessory rights as against .all except the United States. United States v. Coston, I.D. No. A–30835 (February 23, 1968); Ernest Smith, I.D. No. A–29590 (August 2, 1963).

based on the results of surface samples assayed and visual observations of limestone beds situated on the claims, defendants made arrangements for core drilling through the limestone beds in order to further evaluate the claims and to obtain information necessary to establish a valid "discovery" under the mining laws.[4] Pursuant to these arrangements defendants commenced construction of an access road for drilling equipment in late June 1967. On or about June 27, 1967, a representative of the Forest Service of the United States appeared on the property and prohibited the performance of any further work on the claims by the locators.

After a meeting between the locators and Forest Service representatives held on July 5, 1967, Colorado Contest No. 425 disputing the validity of the claims was initiated with the Bureau of Land Management of the Department of Interior. This contest was begun on August 4, 1967, at the request of the Regional Forester of the United States Department of Agriculture. The complaint alleged a lack of mineral "discovery" and that the claims were located for a common variety of rock which was not locatable under 30 U.S.C. § 611 et seq. and regulations promulgated pursuant thereto, 43 C.F.R. § 3511.1(a), (b). A hearing on the merits in that Contest was concluded on January 19, 1970; the cause is still pending before the Hearing Examiner.

Meanwhile, at some time prior to March 28, 1968, steps were initiated to withdraw the public land area, including that embraced in the claims in question, from further settlement, location, sale, or entry, and to reserve same for recreational and scenic purposes.[5] The justification statement which was a part of the request for withdrawal was placed in final form on March 28, 1968, and the request for withdrawal was submitted by the Forest Supervisor on April 1, 1968. On July 17, 1968, notation was made in the records of the Bureau of Land Management office in Denver, Colorado, of receipt of the request for the proposed withdrawal. The effect of the withdrawal request and notation was to temporarily segregate the lands "from settlement, location, sale, entry, lease, and other forms of disposal under the public land laws, including the mining * * * laws * * *" pursuant to the regulations of the Secretary of the Interior, 43 C.F.R. § 2311.1–2. This notice of proposed withdrawal was published in the Federal Register on Wednesday, August 7, 1968.

4. In order to constitute a valid discovery upon a lode mining claim, there must be a discovery on the claim of a lode or vein bearing mineral which would warrant a prudent man in the expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine; it is not sufficient that there is only a showing which would warrant further exploration in the hope of finding a valuable deposit. It must be shown that the claim is valuable for mining purposes, and in order to be valuable within the meaning of the mining laws, the deposit must be marketable. Wurts v. United States, I.D. No. A–30945 (January 23, 1969). See also, United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); Converse v. Udall, 399 F.2d 616 (9th Cir. 1968).

5. 43 U.S.C. § 141 provides:
The President may, at any time in his discretion, temporarily withdraw from settlement, location, sale, or entry any of the public lands of the United States, including Alaska, and reserve the same for water-power sites, irrigation, classification of lands, or other public purposes to be specified in the orders of withdrawals, and such withdrawals or reservations shall remain in force until revoked by him or by an Act of Congress.

This authority has been delegated to the Secretary of the Interior by Executive Order 10355, 3 C.F.R. 873 (1949–1953 Compilation). According to the decisions of the Department of the Interior, the validity of the claim can be established only by showing that there was a discovery prior to the withdrawal of the land from mining entry. United States v. Wurts, I.D. No. A–30945, n. 4 (January 23, 1969), and cases cited therein.

Thereafter, several requests were made of the Forest Service for mineral reports so that the Bureau of Land Management might evaluate the request for withdrawal. Such reports, however, were not forthcoming, and further action on the proposed withdrawal is being withheld because of the pendency of the Contest proceeding and the proceeding in this Court.[6]

During the pendency of the withdrawal request, the Government and the locators undertook a joint, collaborative sampling and assaying program (involving core drilling)—pursuant to a contest pre-hearing conference order.[7] The object of this program was to determine (and gather evidence regarding) the existence of a valid "discovery" within the meaning of the mining laws. After some further delay following completion of this program, locators learned (for the first time, they claim) that they were required to establish marketability as one of the elements of a legally valid discovery. At the subsequent pre-hearing conference of August 26, 1969, locators also learned that the Government took the position that locators were not entitled to perform further work on the claims after July 17, 1968 (the date of notation of the request for withdrawal on the land office records), and that the results of any further work performed after such date could not be given consideration in the contest proceeding.

Notwithstanding the position of the Government in this regard, locators went back on the property with the intent and the desire to conduct further core drilling and roadbuilding, and also to remove a quantity of limestone from the claims in an effort to establish marketability (estimated at 2 to 3,000 tons). They were prevented from doing so by the temporary restraining order which issued from this Court as a preliminary matter in the present action. As mentioned earlier, the principle relief sought by the Government, as plaintiffs in this action, is a temporary injunction to prevent defendant locators from conducting any mining, exploratory, developmental, or other activities on the disputed claim sites pending administrative determination of the validity of the claims. The bases urged for this injunction are (1) great and irreparable injury to the land from such activities; *and/or* (2) the validity and effect of the request for withdrawal.

## II. JURISDICTION

A. *To Issue a Temporary Injunction*

Plaintiff invokes the general jurisdiction of this Court to decide civil actions, suits or proceedings commenced by the United States.[8] There are numerous

---

6. Thus, since a decision on the proposed withdrawal depends in part upon an evaluation of the mineral content and potential mining use value of the lands in question, the Bureau of Land Management has apparently chosen to delay and rely on its forthcoming decision in Colorado Contest #425 concerning the legal validity of the mining claims. Further, since the Hearing Examiner in the said contest proceeding must decide the legal (evidentiary) effect of the *request* for withdrawal, he has apparently delayed and deferred such decision to this Court in this proceeding regarding that question. Although the merits of this procedure are not presently before this Court, such a procedure should not be approved. It appears to be an abdication of administrative decision-making responsibility and an attempt to obtain a preliminary judicial view (as opposed to *re-*

view) of administrative matters. This would seem to be true even if this Court does have jurisdiction presently to consider the "probable" merits of the administrative matters in order to consider issuance of the temporary injunction sought by plaintiffs. We refuse to furnish an advance decision on the law of the case except to say that the actions of the Government are not frivolous.

7. Prehearing Order of May 15, 1968, United States Department of the Interior, Bureau of Land Management, Colorado Contest # 425.

8. The relevant statutory provision, 28 U.S.C. § 1345 provides:
 Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil

cases in which the United States District Courts have entertained injunction suits by the United States for interference with or injury to its lands and have afforded or denied relief as warranted by the merits of the case. *See, e. g.*, Utah Power & Light Co. v. United States, 243 U.S. 389, 37 S.Ct. 387, 61 L.Ed. 791 (1917); United States v. Barrows, 404 F.2d 749 (9th Cir. 1968); United States v. Hosteen Tse-Kesi, 191 F.2d 518 (10th Cir. 1951).

Defendants maintain, however, that plaintiff is, by its complaint, seeking a *permanent* injunction to restrain further mining activities on the property,[9] and that by law such an injunction may not issue unless defendants' mining claims are determined to be invalid. Since the Bureau of Land Management of the Department of Interior has initial jurisdiction to determine and is determining the validity of the mining claims, defendants contend that this Court has no jurisdiction either to determine the validity of the claims or to issue the permanent injunction. We agree, but do not consider this to be dispositive.

Plaintiff, on the other hand, purports in its briefs to be seeking only a *temporary* injunction pending the administrative determination of the validity of the mining claims—notwithstanding the absence of such a prayer explicitly in its complaint.[10] Jurisdiction to issue the temporary injunction appears sufficient on the basis of the doctrine and reasoning in the case of United States v. Barrows, 404 F.2d 749 (9th Cir. 1968).

In *Barrows*, as in the present case, the Government initially sought (among other things) a preliminary and final injunction enjoining defendants from damaging the surface of the lands in question, from removing materials therefrom, and from maintaining thereon a sand and gravel processing plant.

The court noted that it may be that the district court had no subject matter jurisdiction to grant the full relief requested until final administrative determination of the validity of the mining claim. However, the district court had responded to a Government motion for a conditional restraining order to prevent irreparable injury to the land pending administrative determination of the claim, granting same. The Court of Appeals held that the district court had subject matter jurisdiction to grant relief of that limited character.

Assuming that this Court finds irreparable injury in the case at bar, the only germane distinction between it and the *Barrows* case is that in *Barrows* the Government specifically requested by motion the particular temporary relief sought.

 Thus, the question of jurisdiction to issue the temporary injunction to prevent irreparable injury to the land pending administrative validity of the mining claims depends upon whether plaintiff can be allowed to press its claim therefor without having first amended its complaint or filed a motion specifically asking for such relief. Such an objection to jurisdiction should not be fatal in a case such as this where the case was actually tried on the issues of both temporary and permanent injunctive relief. It seems more like a matter of nomenclature since the Government could not have hoped on the merits to gain more than temporary injunctive relief.[11] It is concluded, therefore, that this Court has jurisdiction to grant the temporary relief sought.

B. *Jurisdiction to Entertain the Counterclaim and Determine the Validity and Effect of the Request for Withdrawal*

 As mentioned previously, both parties to this action and apparently the

---

actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

9. *See* note 1 *supra.*

10. *See* note 1 *supra.*

11. These issues were set forth in the agreed pretrial order in the case.

administrative agency desire a determination by this Court of the question of the validity and effect of the request for withdrawal. This we cannot furnish because as we see it there is no subject matter jurisdiction to determine such an administrative question in advance.

Defendants allege jurisdiction to determine the counterclaim by virtue of the fact that (1) plaintiff is the United States and defendants are residents of Colorado; and (2) by virtue of the fact that "[p]laintiff has invoked the jurisdiction and the interposition of this Court in relation thereto." Counterclaim, at 1. However, the statute under which the United States brings this action grants jurisdiction of "all civil actions, suits or proceedings commenced by the United States * * *." 28 U. S.C. § 1345. The counterclaim asserted by defendants is not necessarily a civil action, suit, or proceeding commenced by the United States within the meaning of that statute.

There are cases holding (or saying) that the United States does not waive sovereign immunity by the institution of a suit and that this immunity extends to counterclaims. United States v. Hosteen Tse-Kesi, 191 F.2d 518 (10th Cir. 1951); United States v. Munroe Towers, Inc., 286 F.Supp. 92 (D.N.J. 1968). No consent by the United States to be sued regarding the subject matter of the counterclaim has been demonstrated in this case.

Thus, this Court is without independent jurisdiction to entertain the counterclaim or determine the withdrawal question; and there is no jurisdiction at all unless determination of the withdrawal question is necessary to a determination of the issue which is properly before this Court—namely, the granting of the temporary injunction sought by the Government. It is in our view unnecessary to determine the withdrawal question in order to issue the temporary injunction because the first ground asserted by plaintiff therefor—irreparable injury to Government-owned lands—is sufficient.

■ Insofar as a ruling on the validity and effect of the request for withdrawal is crucial to a determination of defendants' rights in the administrative proceeding, it must be concluded that the administrative agency is responsible for making this ruling and that this Court is not free to consider the question until the administrative remedies have been exhausted.[12]

### III. ADEQUACY OF SHOWING IN SUPPORT OF THE TEMPORARY INJUNCTION

■■ Turning now to the merits of the Government's request for injunctive relief, our inquiry is whether the proposed activities of the defendants would in fact cause irreparable injury to the public lands in question while their right to conduct such activities remains undetermined.

There is no question but that sufficient evidence was presented in the hearing on the merits as to irreparable injury resulting from the defendants' proposed removal of 2 to 3,000 tons of limestone from the property. One expert testified, for example, that the removal of 3,000 tons of a thirty-foot thickness of limestone would require an excavation approximately fifteen feet high and fifty feet wide in the hillside. Even assuming that the excavation were made in the presently existing quarry opening, it would cause additional damage to the land because the overburden above the excavation would slough and collapse and creep back up into the hillside.

We are mindful that the initial roadbuilding was done in part with the consent and cooperation of the Forest Service. This does not preclude the Government from seeking injunctive relief against additional similar activity and further scarring of the landscape.

In light of the irreparable injury shown and because the administrative

---

12. *See* note 6 *supra.*

actions commenced by the Government do not appear to be completely lacking in merit, it is to be concluded that the temporary injunction to prevent further damage to the land pending administrative determination of the validity of the claims should be granted.

Finally, it is to be observed that the Forest Service is advancing a valid interest in seeking to preserve the scenic character of this area. The public has an interest in preventing the needless defilement of forest lands at least pending determination of the validity of the claims and the attempted withdrawal. If the defendants were allowed to proceed, the damage incapable of repair could take place.