447 F.2d 80
 Esther BARROWS, as an individual and as Executrix of the
Last Will of E. A. Barrows, Deceased, Plaintiff-Appellant,
v.
Walter J. HICKEL, as Secretary of the Interior of the United
States of America, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
The ESTATE of E. Arthur BARROWS, Deceased, et al.,
Defendants-Appellants.
 Nos. 25944, 26045.
 United States Court of Appeals, Ninth Circuit.
 Aug. 17, 1971, Rehearings Denied Sept. 27, 1971.
 
 John B. Lonergan (argued), Lonergan, Jordan, Gresham & Varner, San Bernardino, Cal., for appellant Barrows.
 Robert E. Kopp, Dept. of Justice (argued), William D. Ruckelshaus, Asst. Atty. Gen., Washington, D.C., Robert L. Meyer, U.S. Atty., Los Angeles, Cal., for appellants Barrows' Estate and others.
 Robert S. Lynch (argued), Edmund B. Clark, Dept. of Justice; Walter Kiechel, Jr., Acting Asst. Atty. Gen., Washington, D.C., Robert L. Meyer, U.S. Atty., Ernestine Tolin, Asst. U.S. Atty., Los Angeles, Cal., for appellees.
 Before CHAMBERS, MERRILL and KILKENNY, Circuit Judges.
 MERRILL, Circuit Judge:
 
 
 1
 In 1953 Barrows and his wife posted and filed a location notice, whereby they purported to locate a mining claim for sand and gravel at a site on Grout Creek in the San Bernardino National Forest. The Barrows leased the claim in 1960 to the Big Bear Rock and Materials Company, which, with others, has since operated a large commercial sand and gravel mining and processing plant on the claim.
 
 
 2
 In 1964 the United States Forest Service initiated an administrative proceeding in the Bureau of Land Management of the Department of the Interior to contest the validity of the claim. The Secretary ultimately determined that the claim was void, and his decision was upheld by the District Court on review.
 
 
 3
 While administrative proceedings were pending, the United States brought a separate action in federal court to obtain damages for trespass and conversion and interim relief until the validity of the mining claim was settled.[1] After the Secretary's decision was upheld by the District Court, the United States filed an amended complaint that sought to permanently enjoin the Barrows and their lessees from any further mining operations on the claim, and to obtain an accounting and money damages for materials removed from the land. Thereafter, the District Court entered summary judgment evicting the Barrows and their lessees, requiring removal of their mining plant and equipment, and enjoining any use of or entry on the lands in furtherance of their interests in the disputed claim.
 
 
 4
 The appeals in these two cases have been consolidated for our review.
 
 I. Case No. 25,944
 
 5
 In this case Barrows appeals from the District Court's grant of summary judgment affirming a decision of the Secretary of the Interior that the Barrows' Grout Creek claim was null and void under 30 U.S.C. 22, 611 (1964) for lack of timely discovery of a 'valuable mineral deposit' prior to July 23, 1955.
 
 
 6
 In order for a mineral claim on public lands to be valid it is necessary that the discovered mineral deposits be 'valuable.' 30 U.S.C. 22 (1964). By Act of July 23, 1955, 69 Stat. 368, 30 U.S.C. 611, Congress determined that 'common varieties' of sand and gravel could not thereafter qualify as 'valuable mineral deposits' within the meaning of the mining laws of the United States. The record clearly establishes that the disputed Grout Creek deposit is a 'common varieties' deposit within the meaning of the Act. Consequently, if the Barrows did not discover valuable sand and gravel deposits on the claim site prior to July 23, 1955, they do not have a valid claim.
 
 
 7
 The proceedings in the Department of the Interior focused on whether the Grout Creek deposits were 'valuable' prior to July 23, 1955, under the 'prudent-man test'[2] and its complement and refinement, the 'marketability test.'[3] It seems reasonably clear that both tests would have been satisfied under the circumstances that existed at the time of the administrative hearing. The hearing examiner found that the material in the Barrows' claim was in 1964 'equal or superior' to other aggregate materials found in the area. In 1964 there was a substantial local demand for sand and gravel from the Barrows' claim, and the Grout Creek deposits were being profitably exploited. The Secretary determined, however, that these conditions did not exist until 1960, and that the deposits failed to satisfy the 'prudent-man test' between 1953, when the Barrows purported to locate their claim, and the effective date of the 1955 Act.
 
 
 8
 Appellant argues that the Secretary's decision conflicts with the 'prudent-man test' by requiring actual successful exploitation rather than the potential for profitable exploitation. Noting the Secretary's emphasis on the fact that until 1960 Barrows was a 'small operator' who had only a small part of the market, appellant contends that the Secretary improperly required a showing of substantial profit in the limited market that was left over after established operators had had their share. The effect of the Secretary's decision, appellant asserts, is to encourage monopolization at the expense of small mining operators.
 
 
 9
 Actual successful exploitation of a mining claim is not required to satisfy the 'prudent-man test.' See United States v. Coleman, 390 U.S. 599, 602, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); United States v. Anderson, 74 I.D. 292, 298 (1967). The Secretary's opinion makes it clear, however, that the Department did not require appellant to prove that he had an economically successful operation prior to July 23, 1955. The opinion only pointed out that the quantity of material actually sold by appellant prior to the effective date of the 1955 Act was, in and of itself, too insubstantial to establish that a prudent man would have tried to develop the Grout Creek claim.
 
 
 10
 We agree that a claimant's ability to meet the 'marketability test' cannot be made to depend on the extent of the market not already preempted by established operators. But the Secretary did not base his decision on the notionthat the needs of the local market prior to 1955 were satisfied by large established operators. Rather, the Secretary determined that there was no market for material of the quality of the Barrows' Grout Creek deposit that was prudently worth pursuing in the years 1953 to 1955, because in those years deposits of superior quality were being actively exploited in the area and there was only a limited local demand for sand and gravel.[4]
 
 
 11
 There is support in the record for the Secretary's finding, and we are not at liberty to disregard it.[5]
 
 
 12
 Nor can we accept appellant's argument that the 'prudent-man test' should be deemed satisfied if an increased market and the depletion of better quality reserves are reasonably to be anticipated. The 'marketability test' requires claimed materials to possess value as of the time of their discovery. Locations based on speculation that there may at some future date be a market for the discovered material cannot be sustained. What is required is that there be, at the time od discovery, a market for the discovered material that is sufficiently profitable to attract the efforts of a person of ordinary prudence.
 
 
 13
 In case No. 25,944, judgment is affirmed.
 
 II. Case No. 26,045
 
 14
 In this case Barrows and his lessees appeal from the District Court's summary judgment enjoining them from maintaining or operating a sand and gravel plant on the land and ordering them to remove their machinery from the forty acre quarter section that encompasses the disputed claim. The court reserved the issue of damages and accounting for later disposition and stayed enforcement of the judgment pending the appeal.
 
 
 15
 Appellants contend that the District Court's order is overbroad because it bars any claim they might assert on the property and prohibits prospecting and exploration of any kind by them, and because it applies to an area of forty acres, although the mining claim covers only nineteen acres.
 
 
 16
 We disagree. As the Government concedes, the court's order can be read to apply only to the claim in dispute in these proceedings; it does not deny appellants any rights of access or exploration that are enjoyed by the general public. The nineteen acre claim is periodically submerged beneath the waters of Big Bear Lake and its boundaries would be difficult to fix precisely at all times. The court properly exercised its broad equity powers in utilizing a forth acre quarter section as a frame of reference for its decree.
 
 
 17
 Appellants argue that the District Court erred in entering judgment that required them to remove their mining equipment before an appellate court could review the Secretary's determination that the disputed claim was invalid. Appellants contend that the court's injunctive order rendered moot their right to judicial review of the Secretary's decision by stopping all mining activities, preventing a showing of continued marketability, and thus automatically invalidating the claim. Moreover, appellants argue, they were 'forced to resort to an appeal' to stave off the collateral estoppel effect of a judgment declaring that they had no interest in the claim.
 
 
 18
 We find these contentions meritless. The District Court was not required to withhold injunctive relief from the United States until all possible proceedings on judicial review were exhausted. Cf. Utah Power & Light Co. v. United States, 243 U.S. 389, 411, 37 S.Ct. 387, 61 L.Ed. 791 (1917); United States v. Langendorf, 322 F.2d 25, 27 (9th Cir. 1963). The court ordered the removal of the mining equipment only after being assured by appellants' counsel that its order would be appealed immediately. Since the court stayed enforcement of its judgment during the pendency of the joint appeals now before us, it did not require the removal of machinery before the completion of judicial review proceedings. Although the temporary injunction previously entered by the District Court prevented any mining activities by appellants during the pendency of this appeal, we held in an earlier decision that the loss of a market for the sand and gravel resulting from the injunction could not be permitted to prejudice appellants' asserted rights to the Grout Creek claim. United States v. Barrows, 404 F.2d 749, 752 (9th Cir. 1968), cert. den., 394 U.S. 974, 89 S.Ct. 1468, 22 L.Ed.2d 754 (1969).
 
 
 19
 Finally, we reject appellant's contention that the District Court was required to determine the individual liabilities of the various appellants before granting relief to the United States. The court's order properly left the assessment of individual liabilities for later determination. The court explicitly reserved judgment on the issues of damages and accounting, and the scope of its retained jurisdiction extends to all questions necessary to the proper disposition of those issues.
 
 
 20
 In case No. 26,045, judgment is affirmed.
 
 CHAMBERS, Circuit Judge (dissenting):
 
 21
 The majority notes that both the prudent man test and the marketability test would have been satisfied under the circumstances that existed at the time of the administrative hearing. It then recognizes the Secretary's determination that these conditions did not exist until 1960.
 
 
 22
 What changed between 1955 and 1960? The quantity and quality of material on the Barrows' claim surely has not changed. Accessibility and proximity to market are substantially the same (the claim is and was located one-half mile from a major town in the market area and on the major public road in the area).
 
 
 23
 The market demand has changed. It increased five fold, while available material decreased due to the increased demand. This demand was created by the completion of Big Bear Lake, a vast recreation area in close proximity to the Los Angeles area. Lakes of this size are not planned and created overnight. A prudent man would have known of the lake and would have foreseen the almost certain increase in market demand for construction material occasioned by the lake. No speculation is involved.
 
 
 24
 Thus, I dissent.
 
 
 
 [1]
 In United States v. Barrows, 404 F.2d 749 (9th Cir. 1968), cert. den., 394 U.S. 974, 89 S.Ct. 1468, 22 L.Ed.2d 754 (1969), we affirmed the issuance of a preliminary injunction designed to prevent irreparable injury to the land from continued mining operations
 
 
 [2]
 'Under (the) 'prudent-man test' in order to qualify as 'valuable mineral deposits,' the disputed deposits must be of such a character that 'a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine. * * *' Castle v. Womble, 19 L.D. 455, 457 (1894).' United States v. Coleman, 390 U.S. 599, 602, 88 S.Ct. 1327, 1330, 20 L.Ed.2d 170 (1968)
 
 
 [3]
 To qualify as 'valuable mineral deposits' under the 'marketability test' it must be shown that the minerals can be 'extracted, removed and marketed at a profit.' United States v. Coleman, 390 U.S. 599, 600, 88 S.Ct. 1327, 1329, 20 L.Ed.2d 170 (1968)
 
 
 [4]
 The Secretary's ultimate finding was:
 'Our conclusion from the entire record is that an increased demand in the area of the claim for sand and gravel, coupled with the depletion of better quality reserves, resulted after 1955 in a market for material from appellants' claim that did not exist in 1955 and that, although some use of the material and some sales were made prior to July 23, 1955, the material did not, at that time, constitute a 'valuable mineral deposit' within the meaning of the mining law. Accordingly, we agree with the conclusion of the hearing examiner and the Office of Appeals and Hearings that a discovery prior to July 23, 1955, has not been shown.'
 
 
 [5]
 The Secretary's opinion recites the following facts: (1) Expenditures for construction work in the area increased five-fold between 1955 and 1964-- from $1,000,000 to $5,000,000. (2) Appellant was unable to show more than minimal use of the Grout Creek deposit from 1953 to 1955, a good part of which use was for land fill. (3) A prior claimant to appellant's deposit, Smithson, abandoned his claim in 1953 and agreed to refrain from contesting appellant's claim provided he could remove material without charge if he wished. Smithson did thereafter remove a small quantity, most of which was for common fill. (4) Burton, the dominant local operator, who had about 90 per cent of the sand and gravel business in the area in the years 1953-1955, had once obtained sand and gravel from Grout Creek, which was approximately one-half mile from his processing plant. Prior to 1953 Burton began mining deposits on Holcomb Creek, four miles from his plant. In the years 1953 to 1955 he obtained sand and gravel exclusively from the more distant Holcomb Creek deposits, since he felt the material there was superior to the material from Grout Creek. (5) Another operator, Wirz, had a source of supply on Grout Creek in 1951 and 1952, but in 1953 he switched to sources on Boulder Bar and North Bay, which sources were exhausted two years before the hearing