## BUTTE CITY WATER COMPANY *v.* BAKER.

ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 109.  Argued December 16, 1904.—Decided January 3, 1905.

While the disposal of the public lands is made through the exercise of legislative power entrusted to Congress by the Constitution, yet Congress prescribing the main and substantial conditions thereof may rightfully entrust to local legislatures the determination of those minor matters as to such disposal which amount to mere regulations.

Regulations made by the local legislatures in regard to the location of min-

ing claims which are not in conflict with the Constitution and laws of the United States are not invalid as an exercise of a power which cannot be delegated by Congress and such regulations must be complied with in order to perfect title and ownership under the mining laws of the United States.

Even if doubts exist were the matter wholly *res integra,* and although consequences may not determine a decision, this court will pause before declaring invalid legislation long since enacted, and the validity whereof has been upheld by state courts and recognized by this court, and on the faith of which property rights have been built up and countless titles rest which would be unsettled by an adverse decision.

The regulations contained in § 3612 of the Montana Code are not invalid as being too stringent and therefore in conflict with the liberal purpose manifested by Congress in its legislation respecting mining claims.

THE facts are stated in the opinion.

*Mr. L. Orvis Evans,* with whom *Mr. W. W. Dixon* was on the brief, for plaintiff in error:

Congress cannot delegate to a State the authority to legislate upon the sufficiency of records of location of mining claims, that being one of the steps in the disposition of public lands. *Mares* v. *Dillon,* 75 Pac. Rep. 963.

Congress is vested with authority to regulate the disposal of the public lands. Sec. 3, Art. IV, Const. U. S.; *Pollard* v. *Hagan,* 3 How. 224; *De Lima* v. *Bidwell,* 182 U. S. 197; *Jourdan* v. *Barrett,* 4 How. 169, 185; *Russell* v. *Lowth,* 18 Am. Rep. 389; *United States* v. *Hughes,* 11 How. 552, 568; *United States* v. *Gratiot,* 14 Pet. 526, 537; *United States* v. *Fitzgerald,* 15 Pet. 407, 421; 2 Story on Const. § 1328; 2 Tucker on Const. 605.

Not only is the power of disposition in Congress, but the States have no authority whatever in the matter. *Irvine* v. *Marshall,* 20 How. 558; *Wilcox* v. *Jackson,* 13 Pet. 498; *Gibson* v. *Choteau,* 13 Wall. 92, 104; *Seymour* v. *Sanders,* 3 Dill. 437; *Russell* v. *Lowth,* 21 Minnesota, 167; *Miller* v. *Little,* 47 California, 348; *Van Brocklin* v. *Anderson,* 117 U. S. 151, 167; *Cross* v. *Harrison,* 16 How. 164; *Headley* v. *Coffman,* 56 N. W. Rep. 701; *Chapman* v. *Quinn,* 56 California, 266, 292; *Kissell* v. *St. Louis,* 18 How. 19.

Congress has no right to delegate that power. The Constitution does not give it the authority to delegate it. A legislative body has no power of delegation in the matter of making laws. Cooley Const. Lim., 6th ed., 137; *Field* v. *Clark,* 143 U. S. 649; *Wayman* v. *Southard,* 10 Wheat. 48; *Re Rahrer,* 140 U. S. 545.

Congress never has delegated, or attempted to delegate, to the State, the authority claimed to have been exercised.

If Congress did delegate the authority to the State, the act of the State, the agent, becomes the act of the National Government, the principal, and is to be finally construed by this court.

Submitted by *Mr. Robert B. Smith* and *Mr. J. E. Healy* for defendant in error:

So long have state and local regulations been recognized, either expressly or by implication in this court, that they have become a rule of property under which mining titles have been perfected and under which rights have grown up.

The statutes of the United States, §§ 2322, 2323, 2324, Rev. Stat., give full recognition to local and state rules and regulations, seemingly recognizing that under mining laws everywhere such local rules have ever existed where mining has been carried on. Lindley on Mines, 2d ed. §§ 1 to 25; *O'Donnell* v. *Glenn,* 19 Pac. Rep. 305; *Baker* v. *Water Company,* 72 Pac. Rep. 617; *Jackson* v. *Roby,* 109 U. S. 440; *Erhardt* v. *Boaro,* 113 U. S. 527; *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505; *Telluride Co.* v. *Railway Co.,* 175 U. S. 639; *De Lamar Co.* v. *Nesbitte,* 177 U. S. 524; *Speed* v. *MacCarthy,* 181 U. S. 275; *Blackburn* v. *Portland Mining Co.,* 175 U. S. 571.

The act of Montana of July 1, 1895, was modeled after the Colorado law in the main, and was not adopted in Montana very long before it was copied in Nevada. *Sisson* v. *Sommers,* 55 Pac. Rep. 829; *Purdum* v. *Laddin,* 59 Pac. Rep. 153.

MR. JUSTICE BREWER delivered the opinion of the court.

This was an action of ejectment brought in the District Court of Silver Bow County, Montana. The dispute was between two locations of the same mining ground. The defendant's location was adjudged invalid by the trial court, and its decision was affirmed by the Supreme Court of the State, on the ground of a failure to comply with certain Montana statutes. 28 Montana, 222. These statutes contained regulations concerning the location of mining claims in addition to those prescribed by Congressional legislation, and the question is as to the validity of those additional requirements.

Section 2319, Rev. Stat., provides that "All valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States."

Section 2322 gives to the locators the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, "so long as they comply with the laws of the United States, and with State, Territorial, and local regulations not in conflict with the laws of the United States governing their possessory title."

Section 2324 contains this grant of authority:

"SEC. 2324. The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground so that its boundaries can

be readily traced.   All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

Section 2332 makes the statute of limitations for mining claims of a State applicable for certain purposes to mining claims under the Government.

Section 2338 reads as follows:

"As a condition of sale, in the absence of necessary legislation by Congress, the local legislature of any State or Territory may provide rules for working mines, involving easements, drainage, and other necessary means to their complete development; and those conditions shall be fully expressed in the patent."

Section 2339 contains this clause:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same."

In 1893 Congress passed an act (28 Stat. 6) relieving from the necessity of the annual labor for that year, "so that no mining claim which has been regularly located and recorded as required by the local laws and mining regulations shall be subject to forfeiture for non-performance of the annual assessment for the year eighteen hundred and ninety-three," and a similar statute was enacted in 1894 in respect to the annual labor for that year.   28 Stat. 114.

While in the above sections there is not that direct grant of authority to the State to legislate respecting locations as there is to miners to make regulations, yet there is a clear recognition of such legislation.   All these statutory provisions, except the last two sections referred to, were embodied in the legislation of 1872, and have been in force ever since.

Acting upon the belief that they were fully authorized, nearly all, if not all, the States in the mining regions have passed statutes prescribing additional regulations in respect to the location of mining claims, some having been in force for more than a score of years.

This court has in many cases recognized the validity of such state legislation. In *Belk* v. *Meagher*, 104 U. S. 279, 284, Chief Justice Waite, speaking for the court, declared that "a location is not made by taking possession alone, but by working on the ground, recording, and doing whatever else is required for that purpose by the acts of Congress and the local laws and regulations."

In *Erhardt* v. *Boaro*, 113 U. S. 527, it appeared that there were no mining regulations prescribed by the miners of the district, and it was said by Mr. Justice Field (p. 536):

"We are therefore left entirely to the laws of the United States and the laws of Colorado on the subject. And the laws of the United States do not prescribe any time in which the excavations necessary to enable the locator to prepare and record a certificate shall be made. That is left to the legislation of the State, which, as we have stated, prescribes sixty days for the excavations upon the vein from the date of discovery, and thirty days afterwards for the preparation of the certificate and filing it for record. In the judgment of the legislature of that State this was reasonable time."

*Kendall* v. *San Juan Mining Company*, 144 U. S. 658, turned on the question of compliance by the locator with a regulation prescribed by the statutes of Colorado concerning the record of locations, and the decision was that a failure to comply rendered the attempted location invalid. In *Shoshone Mining Company* v. *Rutter*, 177 U. S. 505, it was held that a suit brought in support of an adverse claim was not one of which a Federal court necessarily had jurisdiction, because, as said (p. 508):

"In a given case the right of possession may not involve any question under the Constitution or laws of the United

States, but simply a determination of local rules and customs, or state statutes, or even only a mere matter of fact."

Other cases containing similar recognition might also be cited.

The validity of such state legislation has been affirmed by the Supreme Courts of several States. See in addition to the present case *Wolfley* v. *Lebanon Mining Co.*, 4 Colorado, 112; *O'Donnell* v. *Glenn*, 8 Montana, 248; *Metcalf* v. *Prescott*, 10 Montana, 283, 293; *Purdum* v. *Laddin*, 23 Montana, 387; *Sisson* v. *Sommers*, 24 Nevada, 379; *Copper Globe Mining Co.* v. *Allman*, 23 Utah, 410; *Northmore* v. *Simmons*, 97 Fed. Rep. 386.

In 1 Lindley on Mines, 2d ed., sec. 249, the author says:

"State statutes in reference to mining rights upon the public domain must. therefore, be construed in subordination to the laws of Congress, as they are more in the nature of regulations under these laws than independent legislation.

"State and territorial legislation, therefore, must be entirely consistent with the Federal laws, otherwise it is of no effect. The right to supplement Federal legislation conceded to the State may not be arbitrarily exercised; nor has the State the privilege of imposing conditions so onerous as to be repugnant to the liberal spirit of the Congressional laws. On the other hand, the State may not by its legislation dispense with the performance of the conditions imposed by the national law, nor relieve the locator from the obligation of performing in good faith those acts which are declared by it to be essential to the maintenance and perpetuation of the estate acquired by location. Within these limits the State may legislate."

What is the ground upon which the validity of these supplementary regulations prescribed by a State is challenged? It is insisted that the disposal of the public lands is an act of legislative power, and that it is not within the competency of a legislature to delegate to another body the exercise of its power; that Congress alone has the right to dispose of the public lands, and cannot transfer its authority to any state legislature or other body. The authority of Congress over the

public lands is granted by section 3, article IV, of the Constitution, which provides that "the Congress shall have power to dispose of and make all needful rules and regulations respecting the Territory or other property belonging to the United States." In other words, Congress is the body to which is given the power to determine the conditions upon which the public lands shall be disposed of. The Nation is an owner, and has made Congress the principal agent to dispose of its property. Is it inconceivable that Congress, having regard to the interests of this owner, shall, after prescribing the main and substantial conditions of disposal, believe that those interests will be subserved if minor and subordinate regulations are entrusted to the inhabitants of the mining district or State in which the particular lands are situated? While the disposition of these lands is provided for by Congressional legislation, such legislation savors somewhat of mere rules prescribed by an owner of property for its disposal. It is not of a legislative character in the highest sense of the term, and as an owner may delegate to his principal agent the right to employ subordinates, giving to them a limited discretion, so it would seem that Congress might rightfully entrust to the local legislature the determination of minor matters respecting the disposal of these lands.

Further, section 2324 distinctly grants to the miners of each mining district the power to make regulations, and the validity of this grant has been expressly affirmed by this court. In *Jackson* v. *Roby*, 109 U. S. 440, 441, we said:

"The act of Congress of 1866 gave the sanction of law to these rules of miners, so far as they were not in conflict with the laws of the United States. 14 Stat. 251, c. 262, sec. 1. Subsequent legislation specified with greater particularity the modes of location and appropriation and extent of each mining claim, recognizing, however, the essential features of the rules framed by miners, and among others that which required work on the claim for its development as a condition of its continued ownership."

See also *Erhardt* v. *Boaro, supra,* in which (p. 535) is this declaration:

"And although since 1866 Congress has to some extent legislated on the subject, prescribing the limits of location and appropriation and the extent of mining ground which one may thus acquire, miners are still permitted, in their respective districts, to make rules and regulations not in conflict with the laws of the United States or of the State or Territory in which the districts are situated, governing the location, manner of recording, and amount of work necessary to hold possession of a claim."

Now, if Congress has power to delegate to a body of miners the making of additional regulations respecting location, it cannot be doubted that it has equal power to delegate similar authority to a state legislature.

Finally, it must be observed that this legislation was enacted by Congress more than thirty years ago. It has been acted upon as valid through all the mining regions of the country. Property rights have been built up on the faith of it. To now strike it down would unsettle countless titles and work manifold injury to the great mining interests of the Far West. While, of course, consequences may not determine a decision, yet in a doubtful case the court may well pause before thereby it unsettles interests so many and so vast—interests which have been built up on the faith not merely of Congressional action, but also of judicial decisions of many state courts sustaining it, and of a frequent recognition of its validity by this court. Whatever doubts might exist if this matter was wholly *res integra,* we have no hesitation in holding that the question must be considered as settled by prior adjudications and cannot now be reopened.

The Montana statute (Montana Codes Annotated, sec. 3612) among other supplementary regulations, provided that the declaratory statement filed in the office of the clerk of the county in which the lode or claim is situated must contain "the dimensions and location of the discovery shaft, or its

equivalent, sunk upon lode or placer claims," and "the location and description of each corner, with the markings thereon." A failure to comply with these regulations was the ground upon which the Supreme Court of Montana held the location invalid. It is contended that these provisions are too stringent, and conflict with the liberal purpose manifested by Congress in its legislation respecting mining claims. We do not think that they are open to this objection. They certainly do not conflict with the letter of any Congressional statute; on the contrary, are rather suggested by sec. 2324. It may well be that the state legislature, in its desire to guard against false testimony in respect to a location, deemed it important that full particulars in respect to the discovery shaft and the corner posts should be at the very beginning placed of record. Even if there were no danger of false testimony, it was not unreasonable to guard against the resurrection of incomplete locations when by subsequent explorations mining claims of great value have been uncovered.

We see no error in the rulings of the Supreme Court of Montana, and its judgment is

*Affirmed.*