652 P.2d 1050 (1982)
Earl J. BRUBAKER, Rexford L. Mitchell, and Valco, Inc., Plaintiffs-Appellants,
v.
The BOARD OF COUNTY COMMISSIONERS, EL PASO COUNTY, Defendant-Appellee, and
The Springs Area Beautiful Association, Intervenor-Appellee.
No. 81SA186.
Supreme Court of Colorado, En Banc.
September 13, 1982.
*1051 Lohf & Barnhill, P.C., Kenneth E. Barnhill, Jr., Rodrick J. Enns, Denver, for plaintiffs-appellants.
Charles E. Berry, County Atty., Colorado Springs, David Engdahl, Tacoma, Wash., for defendant-appellee.
*1052 Cole, Hecox, Tolley, Edwards & Keene, P.C., Daniel P. Edwards, Stuart W. McKinlay, Colorado Springs, for intervenor-appellee.
Charles F. Cook, Mary Jane C. Due, Washington, D.C., for amicus curiae American Mining Congress.
Carol E. Dinkins, Asst. Atty. Gen., Jacques B. Gelin, Edward Shawaker, James P. Leape, Washington, D.C., for amicus curiae United States of America.
Arnold & Porter, James J. Sandman, Robert H. Klonoff, Washington, D.C., Arnold & Potter, Norton F. Tennille, Jr., Harris D. Sherman, Denver, George E. Benner, Jr., County Atty., Meeker, for amicus curiae Bd. of County Com'rs of Rio Blanco County.
LOHR, Justice.
The appellants, Earl J. Brubaker, Rexford L. Mitchell and Valco, Inc., are holders of unpatented mining claims located on federal land in Teller and El Paso Counties. The appellants sought to conduct limited test drilling on the site of these claims for the purpose of obtaining mineral samples that would be used to determine whether they had made a qualifying discovery of valuable mineral deposits under federal mining law. After receiving the necessary federal approvals for this testing, the appellants applied to El Paso County for a special use permit authorizing the proposed drilling operations in that County. The application was denied by the El Paso County Board of County Commissioners (Board), and the appellants sought review of that action in the El Paso County District Court. The district court affirmed the action of the Board, and an appeal to this court followed.[1] We conclude that the preemption doctrine precludes the Board from denying permission to the appellants to conduct the test drilling necessary to determine the validity of their claims, and so reverse the judgment of the district court.

I.
The mining claims involved in this case are the subjects of a lengthy and litigious history that must be briefly summarized in order to place the present action in context.
In 1966, 25 mining claims, known as the Avenger Claims, were located in the Pike National Forest in a scenic area visible from U.S. Highway No. 24 west of Colorado Springs. The locators initiated some preliminary exploration work on the claims in 1967, but these activities were soon halted by the United States Forest Service. At the instance of the Forest Service, the United States then brought a contest disputing the validity of the Avenger Claims before the Bureau of Land Management of the Department of the Interior. While this contest was pending, the Forest Service filed an application to withdraw an area including these claims from mineral entry, and obtained a temporary injunction in federal district court prohibiting further exploration on the claims pending resolution of the contest. United States v. Foresyth, 321 F.Supp. 761 (D.Colo.1971). In October 1975 the Interior Board of Land Appeals (IBLA) entered an order in United States v. Foresyth, IBLA 73-166 (Oct. 30, 1975), declaring 18 of the 25 Avenger Claims void because of failure to discover a valuable mineral deposit prior to withdrawal of the lands from mineral entry.[2] However, it also concluded that the remaining claims might be valid if certain limestone outcroppings discovered *1053 on the claims prior to withdrawal proved sufficient in quantity and quality to be marketable. With respect to those claims, the IBLA authorized core drilling to obtain samples from the sites so that marketability could be determined and the validity of the claims resolved.
The appellants then brought an action in federal district court to require federal authorities to permit implementation of the order of the IBLA, and on July 18, 1978, the district court entered an order directing that the core drilling be allowed to proceed and that the parties jointly move for a partial dissolution of the injunction entered by the federal district court in United States v. Foresyth, supra, to the extent necessary to allow this test drilling. Brubaker v. Andrus, No. 77-W-280, (D.Colo. July 18, 1975). To ensure reasonable protection of the surface resources in connection with this drilling, the district court ordered the appellants to submit a plan of operations for approval by the District Ranger of the United States Forest Service pursuant to 36 C.F.R. § 252.5 (1981).[3]
The appellants duly submitted a proposed operating plan to the District Ranger, who prepared an Environmental Assessment Report concerning the core drilling operations. This report considered the effect of the proposed activities on the environment and was based on consultation with federal and local officials and concerned private parties. Finding that there would not be a significant effect upon the quality of the human environment as a result of the proposed operations, the Ranger concluded that an environmental impact statement would not be necessary. See 42 U.S.C. § 4332(2)(C) (1976). Some modifications to the plan, however, were imposed by the Ranger in order to minimize the adverse environmental impact of the drilling activity, and the plan was approved as modified. The approved plan called for the drilling of eleven holes, six in El Paso County and five in Teller County. Each hole was to be approximately an inch and seven-eighths in diameter. The operating plan also required the appellants to post a $1500 reclamation bond to guarantee performance of their obligation to restore the land following the drilling operations. The plan further provided that "[t]he operator, while conducting operations authorized by this Operating Plan, shall comply with the regulations of the U.S. Department of Agriculture and all Federal, State, County, and Municipal laws, ordinances, or regulations which are applicable to the area or operations covered by this plan."
The appellants then applied to the Board for a special use permit authorizing drilling of the proposed test holes in El Paso County. El Paso County considered the permit necessary because the appellants' mining claims in the County are located within an A-2 Agricultural zoning district, and "mineral and natural resources extraction" is a permitted use only if such a permit is obtained. Following hearings before the El Paso County Planning Commission and the Board, the permit application was denied by the Board, primarily on the bases that the proposed drilling operations were inconsistent with the long-range plans adopted for El Paso County and were incompatible with the existing and permitted uses on surrounding properties.[4]
The appellants then filed a complaint in the El Paso County District Court for review *1054 of the Board's action. They asserted: (1) that the Board was without jurisdiction to deny the special use permit because its action impermissibly conflicted with the operation of federal law, particularly the Act of May 10, 1872, ch. 152, 17 Stat. 91 (1872) (codified as amended at 30 U.S.C. §§ 22-54 (1976)) (cited herein as "Mining Law of 1872"), and therefore was preempted, and barred by the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2; (2) that the Board's action was not supported by competent evidence and was an abuse of discretion; and (3) that the Board's denial of a permit was an unconstitutional taking of property without just compensation in violation of U.S. Const., amend. V and Colo. Const. Art. II, § 15.
On February 6, 1981, the trial court entered its written findings, conclusions and order upholding the Board's action. It concluded that the preemption doctrine did not preclude the Board's action because the operating plan approved by the District Ranger specifically provided that the operator, in executing this plan, "shall comply with the regulations of the U.S. Department of Agriculture and all Federal, State, County, and Municipal laws, ordinances, or regulations applicable to the area or operations covered by this plan." The court found this express reference to county regulation a basis for the Board's jurisdiction. It further held that the traditional tests for establishing federal preemption were not met, reasoning (1) that the Mining Law of 1872 did not contain an express declaration of intent to preempt state regulation, (2) that this law and related regulations did not create a pervasive scheme that necessarily precluded exercise of any state authority over the subject, (3) that the need for national uniformity in this area was not so great as to require a conclusion that federal authority must be exclusive, and (4) that the application and enforcement of the El Paso County zoning regulations did not interfere with accomplishment of the objectives and purposes of Congress. On this final point, the court concluded that the purpose of fostering the economic development of the nation's resources embodied in the Mining Law of 1872 was tempered by the environmental protection concerns reflected in the National Environmental Policy Act of 1969, Pub.L. No. 91-190, 83 Stat. 852 (1970) (codified as amended at 42 U.S.C. §§ 4321-4347 (1976)), and the Environmental Quality Improvement Act of 1970, Pub.L. No. 91-224, 84 Stat. 114 (1970) (codified as amended at 42 U.S.C. §§ 4371-4374 (1976)). It further reasoned that the El Paso County zoning regulations did not absolutely proscribe mineral development in the area of the contested claims, but merely conditioned such development upon compliance with reasonable legislative standards. The court also concluded that the Board did not abuse its discretion in denying the permit and that the Board's action did not constitute an unconstitutional taking of the appellants' property.
An appeal to this court followed.[5] We reverse because we conclude that the Board has applied its zoning ordinances so as to prohibit a use of federal property that has been authorized by federal law, with the result that the Board's action violates the preemption doctrine, which has its roots in the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.[6]

II.
The underlying rationale of the preemption doctrine is that the Supremacy Clause invalidates state laws that "interfere with, or are contrary to, the laws of Congress." Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23, 73 (1824); accord, Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 101 S.Ct. *1055 1124, 67 L.Ed.2d 258 (1981). The departure point for application of preemption is a recognition that the "exercise of federal supremacy is not lightly to be presumed." Schwartz v. Texas, 344 U.S. 199, 203, 73 S.Ct. 232, 235, 97 L.Ed. 231, 235 (1952); accord, Alessi v. RaybestosManhattan, Inc., 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402, 416 (1981); New York State Department of Social Services v. Dublino, 413 U.S. 405, 413, 93 S.Ct. 2507, 2513, 37 L.Ed.2d 688, 695 (1973).
Preemption generally is applicable in two situations. First, where congressional legislation either explicitly or implicitly reflects an intent to occupy an entire field, state legislation dealing with that same area is precluded. See, e.g., Ray v. Atlantic Richfield Co., 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973). As the United States Supreme Court stated in Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459 (1947):
Such a purpose may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. Pennsylvania R. Co. v. Public Service Comm'n, 250 U.S. 566, 569 [40 S.Ct. 36, 37, 64 L.Ed. 1142]; Cloverleaf Butter Co. v. Patterson, 315 U.S. 148 [62 S.Ct. 491, 86 L.Ed. 754]. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Hines v. Davidowitz, 312 U.S. 52 [61 S.Ct. 399, 85 L.Ed. 581]. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. Southern R. Co. v. Railroad Commission, 236 U.S. 439 [35 S.Ct. 304, 59 L.Ed. 661]; Charleston & W.C.R. Co. v. Varnville Co., 237 U.S. 597 [35 S.Ct. 715, 59 L.Ed. 1137]; New York Central R. Co. v. Winfield, 244 U.S. 147 [37 S.Ct. 546, 61 L.Ed. 1045]; Napier v. Atlantic Coast Line R. Co., supra. Or the state policy may produce a result inconsistent with the objective of the federal statute. Hill v. Florida, 325 U.S. 538 [65 S.Ct. 1373, 89 L.Ed. 1782].
Accord, e.g., Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981); Ray v. Atlantic Richfield Co., supra.
Second, even if Congress has not completely preempted an entire area, a particular state statute is void to the extent it actually conflicts with a valid federal law. The United States Supreme Court recently stated the applicable principles guiding inquiry as to the existence of a conflict in Ray v. Atlantic Richfield Co., supra, 435 U.S. at 158, 98 S.Ct. at 994-995, 55 L.Ed.2d at 188-89:
A conflict will be found "where compliance with both federal and state regulations is a physical impossibility ...," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), or where the state "law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941); Jones v. Rath Packing Co., supra [430 U.S.] at 526, 540-541 [97 S.Ct. at 1310, 1316-17]. Accord, De Canas v. Bica, 424 U.S. 351, 363 [96 S.Ct. 933, 940, 47 L.Ed.2d 43] (1976).
see also Maryland v. Louisiana, supra; see generally, Hagood v. Heckers, 182 Colo. 337, 513 P.2d 208 (1973).
The appellants do not contend that the Mining Law of 1872 precludes all state legislation concerning mining activities on federal lands. Rather, they assert that the particular action of the Board in this case "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," and that, for this reason, it is impermissible. We agree.
Federal mining law has its foundation in the Mining Law of 1872.[7] The act declares that:

*1056 Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States ... shall be free and open to exploration and purchase....
30 U.S.C. § 22 (1976).
As evidenced by this statute, the underlying purpose of the mining laws is to encourage exploration for and development of mineral resources on public lands. See, e.g., United States v. Weiss, 642 F.2d 296 (9th Cir. 1981). "The system envisaged by the mining law was that the prospector could go out into the public domain, search for minerals and upon discovery establish a claim to the lands upon which the discovery was made." United States v. Curtis-Nevada Mines, Inc., 611 F.2d 1277, 1281 (9th Cir. 1980). However, the Mining Law of 1872 also leaves room for operation of non-conflicting state requirements in this area. Thus, 30 U.S.C. § 22 further provides that the right to explore and purchase lands of the United States is to be exercised "under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States." And 30 U.S.C. § 26 qualifies the locator's right of possession and enjoyment upon compliance with "laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States...."
Pursuant to the above provisions, the appellants seek to conduct drilling operations necessary to establish their discovery of valuable mineral deposits on the contested claims. This activity has been subjected to the necessary federal review and approvals, but the Board asserts that it may now deny the appellants the right to use the land in this manner. The Board seeks not merely to supplement the federal scheme, but to prohibit the very activities contemplated and authorized by federal law. Such a veto power is not consistent with the Supremacy Clause.
A similar issue was presented in Ventura County v. Gulf Oil Corp., 601 F.2d 1080 (9th Cir. 1979), aff'd without opinion, 445 U.S. 947, 100 S.Ct. 1593, 63 L.Ed.2d 782 (1980) (Ventura County). There, the County of Ventura sought to prevent the federal government's oil lessee from conducting drilling operations on federal land until it obtained a permit from the county in compliance with Ventura's zoning ordinances governing oil exploration and extraction activities. The permit could be "issued on whatever conditions Ventura determines appropriate, or ... may never be issued at all." 601 F.2d at 1084. The court held that the Supremacy Clause precluded enforcement of the zoning ordinances against the lessee, stating "The federal Government has authorized a specific use of federal lands, and Ventura cannot prohibit that use, either temporarily or permanently, in an attempt to substitute its judgment for that of Congress." Id.
Similarly, the attempt by the Board to prohibit the appellants' drilling operations because they are inconsistent with the long-range plan of the County and with existing, surrounding uses reflects an attempt by the County to substitute its judgment for that of Congress concerning the appropriate use of these lands. Such a veto power does not relate to a matter of peripheral concern to federal law, but strikes at the central purpose and objectives of the applicable federal law. The core drilling program is directed to obtaining information vital to a determination of the validity of the appellants' mining claims. Recognition of a power in the Board to prohibit that activity would contravene the Congressional determination that the lands are "free and open to exploration and purchase," 30 U.S.C. § 22, and so would "stand as an obstacle to the accomplishment and execution of the full purposes *1057 and objectives of Congress"[8] under the mining laws.
The trial court concluded that Ventura County was distinguishable because the federal law at issue in that case, the Mineral Lands Leasing Act of 1920, ch. 85, 41 Stat. 437 (1920) (codified as amended at 30 U.S.C. §§ 181-263 (1976 & Supp. IV. 1980)) is more pervasive than the federal scheme embodied in the Mining Law of 1872. Based on this premise it reasoned that, unlike in Ventura County, state and local regulations were not precluded here. However, that observation is relevant primarily to the question of whether Congress has occupied an entire field and thereby preempted all state and local regulation. See, e.g., City of Burbank v. Lockheed Air Terminal, Inc., supra. Even if Congress has not preempted an entire field, specific state or local laws that conflict with the purposes and objectives of Congressional enactments are nevertheless preempted. Since it is the specific conflict between the Mining Law of 1872 and the application of the Board's zoning ordinance that is at issue in this case, the absence of a pervasive federal scheme is not controlling.
The trial court also concluded that Ventura County was distinguishable because, in the present case, the appellants' federally approved operating plan provided an explicit basis for local jurisdiction in stating that: "[t]he operator, while conducting operations authorized by this Operating Plan, shall comply with the regulations of the U.S. Department of Agriculture and all Federal, State, County, and Municipal laws, ordinances, or regulations applicable to the area or operations covered by this plan." We find this distinction unpersuasive. First, the provision only allows for the operation of "applicable" state and local regulations. Since a state law is not applicable if it is preempted, the scope of the provision is dependent upon, rather than determinative of, the proper resolution of the preemption issue. Second, even if this provision were construed as an attempt to preserve state and local laws that otherwise would be preempted, such a savings clause would be void as beyond the power of the Forest Service Ranger issuing the permit. Indeed, the Forest Service regulations governing such operating plans recognize that those plans may not be used to prohibit legislatively authorized mining activities. 36 C.F.R. 252.1; see also United States v. Weiss, supra, (Regulations contained in 36 C.F.R. § 252, which were promulgated by the Secretary of Agriculture in order to regulate the use of the surface of national forest land used in connection with mining operations authorized by the United States mining laws, are not facially invalid. However, such regulations must be reasonable; "prospecting, locating, and developing of mineral resources in the national forests may not be prohibited nor so unreasonably circumscribed as to amount to a prohibition..." 642 F.2d at 299).
The Board also asserts that the present case is not analogous to Ventura County because the appellants are not endeavoring to conduct mining operations pursuant to an established claim, but are attempting to establish their right to mine these claims by demonstrating that they have discovered valuable mineral deposits on this land. The Board, therefore, asserts that the appellants are merely "explorers" on federally contested claims, and the Board's action does not frustrate any rights of the appellants under the federal mining laws.
We are not persuaded by this argument. 30 U.S.C. § 22 provides that "all valuable mineral deposits in lands belonging to the United States ... shall be free and open to exploration and purchase ..." (emphasis added). Thus, if the appellants' activities properly can be characterized as "exploration," those activities fall within the express scope of the federal statutes. Indeed, by denying the appellants the right to accomplish the desired core drilling and so to determine the validity of their claims, the *1058 Board is attempting to frustrate implementation of the very scheme of disposition of federal mineral lands that is at the core of 30 U.S.C. § 22.
Nor is the Board's action saved from preemption by the provisions of 30 U.S.C. §§ 22[9] and 26[10] recognizing a role for state and local regulations with respect to mining claims. Both of these statutes provide that such state and local regulations are applicable only to the extent that they are not "inconsistent with" or "in conflict with" the laws of the United States. Thus, the statutes merely recognize a role for nonconflicting state and local laws; they do not authorize state regulations that would bar the very activities authorized by the mining laws. This is made clear by the case cited by the Board, Butte City Water Co. v. Baker, 196 U.S. 119, 25 S.Ct. 211, 49 L.Ed. 409 (1905). There, the United States Supreme Court upheld a Montana law prescribing certain location requirements for mining claims, relying in part on the savings provisions of 30 U.S.C. § 22. However, the Court clearly did not sanction all state regulation of mining claims, and indicated that state laws prohibiting activities authorized by the federal mining laws would be impermissible. Thus, the Court noted that Congress had established the main and substantial conditions of disposal, and that local authorities possessed limited discretion to establish supplementary regulations. Further, the Court quoted, with apparent approval, the following statement:
State and territorial legislation, therefore, must be entirely consistent with the Federal laws, otherwise it is of no effect. The right to supplement Federal legislation conceded to the State may not be arbitrarily exercised; nor has the State the privilege of imposing conditions so onerous as to be repugnant to the liberal spirit of the Congressional laws.
196 U.S. at 125, 25 S.Ct. at 212, 49 L.Ed. at 412, quoting from 1 Lindley, Mines § 249 (2d Ed. 1903). Rather than supporting the Board's position, Butte Water Co. v. Baker, supra, reinforces the conclusion that the Board may not apply its zoning ordinances so as to prohibit activity authorized under the mining laws.
State ex rel. Andrus v. Click, 97 Idaho 791, 554 P.2d 969 (1976), relied upon by the trial court and the appellees, leads to no different conclusion. There, the claimants, who held valid unpatented federal mining claims, challenged the right of the state to require application for a permit under the Idaho Dredge and Placer Mining Protection Act as a condition to conducting mining operations on federal lands. In order to obtain such a permit, the act required the operator of a dredge or placer mine to pay a fee and obtain a surety bond conditioned upon faithful performance of his obligations. Those obligations included requirements to restore land and streams disturbed by the mining operations to their original state, so far as reasonably possible, at the conclusion of such operations. The trial court entered a declaratory judgment that the Idaho act was preempted by the federal mining laws, and the Supreme Court of Idaho reversed. Idaho's high court concluded that the federal mining laws did not reflect an express or implied intent to preempt all state or local regulation of mining activity, and that there was no direct collision *1059 between applicable state and federal laws so as to trigger preemption of local regulation. On the latter point, the court stated:
[T]he mere fact that federal legislation sets low standards of compliance does not imply that the federal legislation grants a right to an absence of further regulation. On the other hand, where a right is granted by the federal legislation, state regulation which rendered it impossible to exercise that right would be in conflict.
97 Idaho at 796, 554 P.2d at 974.
Since the requirement of a permit and restoration of the land did not render it impossible to exercise rights specifically granted by federal legislation, the court concluded that the preemption doctrine was inapplicable.
The Idaho Supreme Court expressly noted that it did not address the question of whether the state could deny such a permit. Since the claimants in that case had not applied for a permit, it concluded that this issue was not properly before it. In the course of its opinion, however, the court stated, "Certainly, ... these provisions of the Idaho Act would be unenforceable to the extent they rendered it impossible to mine the lode deposit." 97 Idaho at 797, 554 P.2d at 975.
In the present case, we are not presented with a challenge to the facial validity of the El Paso zoning ordinances or with the question of whether the appellants could be required to apply for a permit under those ordinances. Rather, we are faced with the issue reserved by the court in State ex rel. Andrus v. Click, supra. That is, we consider a specific application of the local regulations so as to prohibit activities authorized by federal legislation.
It is established that state or local regulation supplementing the mining laws is permissible. See 30 U.S.C. §§ 22, 26; Butte City Water Co. v. Baker, supra; State ex rel. Andrus v. Click, supra. State and local laws that merely impose reasonable conditions upon the use of federal lands may be enforceable, particularly where they are directed to environmental protection concerns. See State ex rel. Andrus v. Click, supra; Note, State and Local Control of Energy Development on Federal Lands, 32 Stanford L.Rev. 373 (1980). Indeed, the appellants concede that such regulation is proper. In this case, however, the Board seeks not to regulate but to prohibit the appellants' core drilling activities. In the resolution denying the application the Board stated that its reasons for this action were inconsistency of the appellants' proposed activities with the long-range land use plans of El Paso County and with existing, surrounding uses. This is not denial of a permit because of failure to comply with reasonable regulations supplementing the federal mining laws, but reflects simply a policy judgment as to the appropriate use of the land. That judgment cannot override the conflicting directive of federal legislation. As stated in Ventura County, 601 F.2d at 1084, "The federal Government has authorized a specific use of federal lands, and [the county] cannot prohibit that use, either temporarily or permanently, in an attempt to substitute its judgment for that of Congress."
Finally, we reject the conclusion of the trial court that the conflict between the Board's action and the mining laws does not frustrate the objectives and purposes of Congress because the policy of the Mining Law of 1872 has been tempered by the policy of environmental protection reflected in the National Environmental Policy Act of 1969 (NEPA), supra, and the Environmental Quality Improvement Act of 1970, supra. The trial court apparently reasoned that the Board's action furthered the environmental concerns of these latter statutes, with the result that it was consistent with the objectives of Congress.
While we recognize that the mining laws and federal statutes concerned with environmental protection reflect disparate and sometimes conflicting goals, "NEPA was not intended to repeal by implication any other statute." United States v. SCRAP, 412 U.S. 669, 694, 93 S.Ct. 2405, 2419, 37 L.Ed.2d 254, 273 (1973); see also 42 U.S.C. § 4335 (1976). Indeed, where there is an unavoidable conflict between NEPA and other federal authority, it is NEPA that *1060 must give way. Flint Ridge Development Co. v. Scenic Rivers Ass'n., 426 U.S. 776, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976). While potentially conflicting federal requirements should be construed, where possible, so that each is allowed its proper scope, see United States v. Weiss, supra, the trial court's conclusion elevates the general policies reflected in NEPA over the specific directive of the federal mining laws applicable to the appellants' claims. Moreover, reference to other federal legislation does not support the trial court's conclusion. In 1970 Congress also enacted the Mining and Minerals Policy Act of 1970, Pub.L. No. 91-631, § 2, 84 Stat. 1876 (1970) (codified at 30 U.S.C. § 21a (1976)), which provides that "it is the continuing policy of the Federal Government in the national interest to foster and encourage private enterprise in ... the orderly and economic development of domestic mineral resources...." 30 U.S.C. § 21a (1976). Consequently, we do not agree with the trial court that the general policy reflected in NEPA and the Environmental Quality Improvement Act of 1970 justifies state prohibition of the core drilling activities at issue here.
In Kleppe v. New Mexico, 426 U.S. 529, 543, 96 S.Ct. 2285, 2293, 49 L.Ed.2d 34, 45 (1976), the United States Supreme Court stated:
Absent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory, but Congress equally surely retains the power to enact legislation respecting those lands pursuant to the Property Clause. [Citations omitted.] And when Congress so acts, the federal legislation necessarily overrides conflicting state laws under the Supremacy Clause. [Citations omitted.] As we said in Camfield v. United States, 167 U.S. [518] at 526 [17 S.Ct., [864] at 867], in response to a somewhat different claim: "A different rule would place the public domain of the United States completely at the mercy of state legislation."
The Court later continued:
The Federal Government does not assert exclusive jurisdiction over the public lands in New Mexico, and the State is free to enforce its criminal and civil laws on those lands. But where those state laws conflict with ... legislation passed pursuant to the Property Clause, the law is clear: The state laws must recede. [Citation omitted.]
426 U.S. at 543, 96 S.Ct. at 2293-94, 49 L.Ed.2d at 46.
In the present case, the Board has applied its zoning regulations so as to prohibit a use of federal lands authorized by federal legislation. That action conflicts with the objectives and purposes of Congress reflected in the federal mining laws, and, as stated by the United States Supreme Court, "The State laws must recede." Id.
The judgment of the trial court is reversed and the case is remanded for entry of judgment in accordance with the views expressed in this opinion.
DUBOFSKY, J., specially concurs.
DUBOFSKY, Justice, concurring:
Because I understand the majority opinion to find preemption of county land use regulation by federal law only with respect to test drilling for purposes of establishing a valid mining claim, I concur in the majority opinion.
NOTES
[1] The Springs Area Beautiful Association intervened as a defendant in the trial court and is a party to this appeal as intervenor-appellee. Additionally, the Board of County Commissioners of Rio Blanco County has filed an amicus curiae brief with this court in support of the position of the Board. The United States of America and the American Mining Congress filed amicus curiae briefs supporting the position of the appellants.
[2] In order to establish a valid mining claim it is necessary that "valuable mineral deposits" be located. 30 U.S.C. § 22 (1976). In general, in the context of disputes between a claimant and the United States, a mineral deposit of the type involved here is "valuable" only if it can be extracted, removed and marketed at a profit the so-called marketability test. United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); United States v. Foresyth, supra, 321 F.Supp. at 763, n. 4; see generally 1 American Law of Mining §§ 4.80-4.90 (Rocky Mountain Mineral Law Found. ed. 1981).
[3] 36 C.F.R. § 252 was promulgated by the Secretary of Agriculture under the authority of the Act of June 4, 1897, ch. 2, 30 Stat. 11, 35, 36 (1897) (codified as amended at 16 U.S.C. §§ 478, 551 (1976)) and sets forth rules and procedures designed to minimize adverse environmental impacts on the surface resources of national forest lands resulting from mining activity conducted on those lands under the United States mining laws, 30 U.S.C. §§ 21-54 (1976). See 36 C.F.R. § 252.1 (1981); see generally United States v. Weiss, 642 F.2d 296 (9th Cir. 1981).
[4] The Board's Resolution denying the special use permit provided that, in addition to the two reasons stated above, the permit was also denied for "other reasons." This was an apparent reference to the reasons given by the Board at its public hearing for denying the appellants' application, including the belief that the proposed operation would result in undue traffic congestion. As the trial court recognized, the support for this finding was subject to "some question." Resolution of the present case is not advanced by further exploration of this secondary reason for denying the application, and we need not discuss it further.
[5] The appeal was filed in this court because of the constitutional issues raised. See section 13-4-102(1)(b), C.R.S.1973.
[6] The Supremacy Clause provides:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
[7] Congressional authority to enact laws affecting federal lands is derived from the Property Clause of the United States Constitution. U.S. Const. art. IV, § 3, cl. 2; see generally, Kleppe v. New Mexico, 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). The Property Clause provides:

The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.
[8] Ventura County, supra, 601 F.2d at 1086, quoting from Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941).
[9] 30 U.S.C. § 22 provides:

Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have declared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining districts, so far as the same are applicable and not inconsistent with the laws of the United States.
[10] 30 U.S.C. § 26 provides in pertinent part:

The locators of all mining locations made on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns,... so long as they comply with the laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth ...