TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 85-702 |
| of | : | JANUARY 28, 1986 |
| JOHN K. VAN DE KAMP<br>Attorney General | : | |
| RODNEY O. LILYQUIST<br>Deputy Attorney General | : | |

_____

THE HONORABLE PHILIP G. LOWE, DISTRICT ATTORNEY, SIERRA COUNTY, has requested an opinion on the following question:

May a county recorder refuse to accept a mining claim affidavit without violating federal law, where the refusal is based upon a county resolution adopted under the terms of Public Resources Code section 2315.1?

CONCLUSION

A county recorder may refuse to accept a mining claim affidavit without violating federal law, where the refusal is based upon a county resolution adopted under the terms of Public Resources Code section 2315.1.

1

ANALYSIS

The issue to be resolved is whether the provisions of Public Resources Code section 2315.1[1] are inconsistent with federal mining laws regarding the annual recordation of an affidavit specifying the amount of labor and improvements made on a mining claim. We conclude that they are not inconsistent with the federal laws.

Section 2315.1 states:

"The board of supervisors may require, by resolution, that any person filing an affidavit pursuant to Section 2315 demonstrate proof of payment of any unsecured tax levied against the mining claim on which the affidavit is filed, prior to the recordation of the affidavit.

"If a resolution is adopted by the board of supervisors pursuant to this section, it may include the following provisions, and any other provisions determined by the board as necessary to carry out the intent of this section:

"(a) A provision prohibiting the county recorder from accepting the affidavit for recordation without the tax collector's certification that the taxes have been paid.

"(b) A provision requiring the following:

"(1) That the county recorder forward the affidavit to the tax collector if the county recorder receives an affidavit for recording by mail and the affidavit does not contain the tax collector's certification that the taxes have been paid.

"(2) That, if applicable, the tax collector then certify that the taxes have been paid on the face of the affidavit and return the document to the county recorder for recording.

"(3) That if the taxes have not been paid, the tax collector return the affidavit unrecorded to the filer."

In California the right to possess and use land or improvements, when not coupled with an ownership interest, is generally treated as a "possessory interest" subject

_____

[1] All references hereafter to the Public Resources Code are by section number only.

2

to taxation. (See Cal. Const., art. XIII, § 1; Rev. & Tax. Code, §§ 103, 104, 107, 201; *United States of America* v. *County of Fresno* (1975) 50 Cal.App.3d 633, 638; *Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 724-725.)

Commonly the taxable possessory interest will be in land that itself is exempt from property taxes because of ownership by the federal, state, or a local government. (See *Kaiser Co.* v. *Reid* (1947) 30 Cal.2d 610, 618; *English* v. *County of Alameda* (1977) 70 Cal.App.3d 226, 238, 240, 242; *McCaslin* v. *DeCamp* (1967) 248 Cal.App.2d 13, 16-17; Cal. Admin. Code, tit. 18, § 21, subd. (b).)

At issue here is a mining claim that is a possessory interest established under federal law, giving the claimant the "exclusive right of possession and enjoyment of all the surface" (30 U.S.C. § 26) of federal property covered by the claim. (See *Public Service Co. of Oklahoma* v. *Bleak* (1982) 134 Ariz. 311 [656 P.2d 600, 605]; *Silliman* v. *Powell* (Utah 1982) 642 P.2d 388, 392.) The mining interest is subject to state taxation. (See *Forbes* v. *Gracey* (1877) 94 U.S. 762, 766-767 [24 L.Ed. 313]; see also *Wilbur* v. *Krushnic* (1930) 280 U.S. 306, 316 [74 L.Ed. 445, 50 S.Ct. 103.].)

Analysis of whether section 2315.1 conflicts with federal mining laws begins with the property clause of the United States Constitution. It states: "Congress shall have power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." (U.S. Const., art. IV, § 3, cl. 2.) As the United States Supreme Court recently observed in *United States* v. *Locke* (1985) U.S. [85 L.Ed.2d 64, 82, 105 S.Ct. 1785, 1798], regarding the possible forfeiture of a federal mining claim: "The United States, as owner of the underlying fee title to the public domain, maintains broad powers over the terms and conditions upon which the public lands can be used, leased, and acquired." (See also *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.* (1983) 459 U.S. 400, 413 [74 L.Ed.2d 569, 103 S.Ct. 697]; *Kleppe* v. *New Mexico* (1976) 426 U.S. 529, 539 [49 L.Ed.2d 34, 96 S.Ct. 2285].)

Under the provisions of the Mining Act of 1872 (30 U.S.C. § 22 et seq.; "Act of 1872"), Congress has authorized United States citizens to enter unappropriated, unreserved federal land to prospect for and develop certain minerals. (See *Topaz Beryllium Co.* v. *United States* (10th Cir. 1981) 649 F.2d 775, 776.) The purpose of the legislation is to encourage mining on the public lands of the United States. (*United States* v. *Weiss* (9th Cir. 1981) 642 F.2d 296, 299; see also *United States* v. *Goldfield Deep Mines Co.* (9th Cir. 1981) 644 F.2d 1307, 1309, cert. den., 455 U.S. 907 (1982).)

"Discovery" of a mineral deposit, followed by minimal procedures to formally "locate" the deposit, gives the individual (the "locator") the right of exclusive

3

possession for mining purposes.  (30 U.S.C. § 26; *United States* v. *Locke, supra*, 85 L.Ed.2d 64, 70.)  As long as $100 of "assessment work" is performed annually, the locator may continue to extract and sell minerals from the claim without paying a royalty to the United States.  (30 U.S.C. § 28; *United States* v. *Locke, supra*, 85 L.Ed.2d 64, 70; *Hickel* v. *Oil Shale Corp.* (1970) 400 U.S. 48, 54-57 [27 L.Ed.2d 193, 91 S.Ct. 196].)

Significantly the Act of 1872 requires that the locators comply with all applicable local regulations "not in conflict with the laws of the United States."  (30 U.S.C. § 26.)  As stated by the California Supreme Court in *Stock* v. *Plumbett* (1919) 181 Cal. 193, 194:

> "The laws of the United States with reference to the location of mining claims expressly recognize the validity of local mining regulations and customs governing locations, and state statutes are construed to have the same force and effect as such regulations.  [Citations.]"

It is clear that "a state legislature . . . may impose additional burdens on the locator of a mining claim . . . and can add further requirements as to the recordation of notices of location without being in conflict with federal law."  (*Barton* v. *DeRousse* (Nev. 1975) 535 P.2d 1289, 1290.)

As long as the additional burdens are not arbitrarily imposed or so onerous as to be repugnant to the federal legislative purpose, they will be upheld.  In the leading case of *Butte City Water Co.* v. *Baker* (1905) 196 U.S. 119, 125 [49 L.Ed. 409, 25 S.Ct. 211], the United States Supreme Court quoted approvingly from 1 Lindley on Mines (2d ed. 1903) section 249:

> "'State and territorial legislation, therefore, must be entirely consistent with the federal laws, otherwise it is of no effect.  The right to supplement Federal legislation, conceded to the state, may not be arbitrarily exercised; nor has the state the privilege of imposing conditions so onerous as to be repugnant to the liberal spirit of the congressional laws.  On the other hand, the state may not, by its legislation, dispense with the performance of the conditions imposed by the national law, nor relieve the locator from the obligation of performing, in good faith, those acts which are declared by it to be essential to the maintenance and perpetuation of the estate acquired by location.  Within these limits the state may legislate.'"

As do many states, California requires that a notice of a federal mining claim be recorded in the county where the claim is located:

4

"Within 90 days after the posting of his or her notice of location upon a lode mining claim, placer claim, tunnel right or location, or millsite claim or location, the locator shall record, in the office of the county recorder of the county in which the claim is situated, a true copy of the notice together with a statement by the locator of the markings of the boundaries . . . ." (§ 2313.)

Also required is the filing of an affidavit each year describing the $100 of labor performed or improvements made on the claim:

"(a)  Whenever labor is performed and improvements are made as required by law upon any mining claim, the person in whose behalf such labor was performed or improvements made, or someone in his behalf, shall, within 30 days after the time limited by law for performing such labor or making such improvements, make and have recorded by the county recorder in books kept for that purpose, in the county in which the mining claim is situated, an affidavit . . . .

"(b)  The affidavit so recorded as required by subdivision (a) of this section, or a copy thereof duly certified by the county recorder, shall be prima facie evidence of the performance of the labor and the making of the improvements as stated in the affidavit.

"(c)  The neglect or failure of the owner of any mining claim to record or cause to be recorded within the time allowed by this section an affidavit containing the statements required by subdivision (a) of this section shall create a prima facie presumption of the act and intent of the owner to abandon such claim at the end of the assessment year within which the labor should have been performed or the improvements made under the laws of the United States, and also shall throw the burden of proof upon the owner or owners of such claim to show that such labor has been made in any contest, suit or proceeding touching the title to the claim . . . ." (§ 2315.)

Returning to the language of section 2315.1, we find that the labor and improvements affidavit of section 2315 may be rejected by a county recorder if "any unsecured tax levied against the mining claim" has not been paid.  The resulting lack of recordation, as set forth in section 2315, shifts the burden of proof concerning whether "such labor has been performed and that such improvements have been made in any contest, suit or proceeding."  (See *Pascoe* v. *Richards* (1962) 201 Cal.App.2d 680, 686-687.)  Accordingly, a mining claim is not forfeited under the terms of section 2315 and

5

2315.1 by the failure to pay unsecured taxes or by the failure to record the yearly labor and improvements affidavit. Rather, the statutes provide for the shifting of the burden of proof concerning the extent of labor performed and improvements made.

In *Silver Core Min. Co.* v. *DeBell* (Colo. 1979) 595 P.2d 269, the plaintiff argued that a statute applying the preponderance of the evidence test to mining claim disputes was inconsistent with federal law. The court analyzed the issue thusly:

> "Although the right to mine claims located on federal land is derived from an Act of Congress, 30 U.S.C. § 22 (1971), which requires annual assessment work, 30 U.S.C. § 28 (1971), there is no provision made as to the quantum of proof necessary to prevail in a dispute over title to those claims. Locators' rights of possession and enjoyment are dealt with in 30 U.S.C. § 26 (1971), which provides that they may have the right of possession and enjoyment, 'so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title . . . .'

> "In light of the above statutes, the application of state law regarding burden of proof is not in conflict with the national policy for mining claims. The statutes cover what Congress has chosen to legislate; the remainder is governed by state law as long as it is not in conflict with federal laws." (*Id.*, at pp. 271-272.)

We believe that section 2315.1 meets the tests for validity set forth in *Butte City Water Co.* v. *Baker*, *supra*, 196 U.S. 119, 125, with respect to the Act of 1872. Section 2315.1 is not in conflict with the letter of any provision of the federal act, it may not be viewed as an arbitrary exercise of legislative power, it does not impose a condition so onerous as to be repugnant to the spirit of the federal scheme, and it does not relieve locators of performing any conditions required by Congress.

Similarly, we believe that section 2315.1 meets the tests for validity with respect to the more recently enacted Federal Land Policy and Management Act of 1976 (43 U.S.C. §§ 1701-1744; "Act of 1976"). Part of this federal legislation establishes a nationwide system for recording mining claims. The federal system, however, is based upon state recording systems -- copies of official state records of mining claims are filed with the Federal Bureau of Land Management:

> "The owner of an unpatented lode or placer mining claim . . . shall . . . prior to December 31 of each year . . . file the instruments required by paragraphs (1) and (2) of this subsection. . . .

6

"(1) File for record in the office where the location notice or certificate is recorded either a notice of intention to hold the mining claim (including but not limited to such notices as are provided by law to be filed when there has been a suspension or deferment of annual assessment work), an affidavit of assessment work performed thereon, [or] a detailed report provided by section 28-1 of Title 30, relating thereto.

"(2) File in the office of the Bureau designated by the Secretary a copy of the official record of the instrument filed or recorded pursuant to paragraph (1) of this subsection, including a description of the location of the mining claim sufficient to locate the claimed lands on the ground." (43 U.S.C. § 1744(a); see 43 C.F.R. § 3833 (1985).)

Of particular relevance to our discussion is the Senate's report explaining the need for the new federal recording system:

"There is no provision in the 1872 Mining Law, as amended, requiring notice to the Federal Government by a mining claimant of the location of his claim. The Mining Law only required compliance with local recording requirements, which usually means simply an entry in the general county land records. . . .

"*This recording requirement is not intended to supersede nor displace the existing recording requirements under State law.* As such, its purpose is to advise the Federal land managing agency, as proprietor, of the existence of mining claims. The agency is not intended to be the official recording office for all ancillary documents (i.e., wills, mechanic's liens, conveyances, tax liens, court judgments, etc.) The county public records would remain, as before, the official repository of such recorded documents." (S.Rep. No.94-583, 94th Cong. 2nd Sess., at pp. 64-65 (1975); emphasis added.)

Federal regulations implementing the Act of 1976 specifically provide:

"*These regulations are not intended to supersede or replace existing recording requirements under state law* except when specifically changed by the provisions of the Federal Land Policy and Management Act of 1976 (43 U.S.C. § 1701), and are not intended to make the Bureau office the official recording office for all ancillary documents (wills, liens, judgments, etc.) involving an unpatented mining claim, mill site or tunnel site." (43 C.F.R. § 3833.0-1(d), emphasis added.)

7

85-702

"Nothing in this subpart shall be construed as a waiver of the assessment work requirements. (30 U.S.C. § 28.) *Compliance with the requirements of this subpart shall be in addition to and not a substitute for compliance* with the requirements of section 2324 of the Revised Statutes and *with laws and regulations issued by any State*, or other authority *relating to performance of annual assessment work*." (43 C.F.R. § 3833.5(b), emphases added.)

The continued vitality of state recording requirements since passage of the Act of 1976 has been recognized by the federal courts. (See *Western Min. Council* v. *Watt* (9th Cir. 1981) 643 F.2d 618, 629, cert. den., 454 U.S. 1031 (1981); *Topaz Beryllium Co.* v. *United States* (D. Utah 1979) 479 F.Supp. 309, 313, affd. 649 F.2d 775 (1981).)

It may be argued that refusal to accept a mining claim affidavit under section 2315.1 "impedes" the operation of the federal recording system. So also would requiring a filing fee for the state affidavit and specifying that it be acknowledged. To some degree these state requirements, if imposed, would constitute "obstacles" for locators attempting to comply with the Act of 1976.

As previously observed, however, although Congress intended to provide federal agencies with an inventory of mining claims through a federal recording system, it contemplated concurrent compliance with the record requirements of the states. Such state laws thus may not be characterized as "obstacles" to the federal statutory purpose. (See *Silkwood* v. *Kerr-McGee Corp.* (1984) U.S. [78 L.Ed.2d 443, 458, 104 S.Ct. 615, 626]; *Pacific Gas & Electric Co.* v. *State Energy Resources Conservation & Development Com.* (1983) 461 U.S. 190, 220-223 [75 L.Ed.2d 752, 103 S.Ct. 1713]; *Commonwealth Edison Co.* v. *Montana* (1981) 453 U.S. 609, 633 [69 L.Ed.2d 884, 101 S.Ct. 2946]; *Exxon Corp.* v. *Governor of Maryland* (1978) 437 U.S. 117, 133-134 [57 L.Ed.2d 91, 98 S.Ct. 2207].) We believe that the same test is applicable as for the Act of 1872: supplemental state requirements will be upheld unless they are arbitrary or so onerous as to be repugnant to the federal purpose. Requiring payment of state taxes validly assessed against mining claim interests is reasonable and appropriate under the circumstances; it cannot be seriously asserted that the requirement is arbitrary or repugnant to the goals of the Act of 1976.

Moreover, it may be noted that a locator may comply with the federal recording system without coming within the strictures of section 2315.1. Filing a copy of the section 2315 labor and improvements affidavit is merely one method of complying with the Act of 1976. Another method would be to file a copy of a "notice of intention to

8

hold"  (see 43 U.S.C. § 1744(a); 43 C.F.R. §§ 3833.0-5(k), 3833.2-3), a document not specified in section 2315.1.

We find nothing in federal law, either in the Act of 1872 or the Act of 1976, that would be inconsistent with the levy and collection of state unsecured taxes upon mining claims.  Conditioning the annual recording of a labor and improvements affidavit upon the payment of state taxes is not an arbitrary exercise of legislative power or so onerous as to be repugnant to the purposes of the federal statutory schemes.

We thus conclude that a county recorder may refuse to accept a mining claim labor and improvements affidavit without violating federal law, where the refusal is based upon a county resolution adopted under the terms of section 2315.1.

*****